O'ROURKE ENGINEERING CONST. CO. v. FOUNDATION CO.

(Circuit Court of Appeals, Second Circuit. November 9, 1915.)

No. 17.

PATENTS ⬳328—VALIDITY AND INFRINGEMENT—FOUNDATION CONSTRUCTION.
  The O'Rourke patent, No. 678,581, for improvements in subterranean or subaqueous dam or foundation construction, claim 2, which covers "a plurality of caissons having removable and registering doors or wall sections in adjacent walls and having their adjacent walls secured together close to said removable doors or wall sections," was not anticipated, discloses patentable invention, and is entitled to a liberal construction; also, *held* infringed.

Appeal from the District Court of the United States for the Southern District of New York.

Suit in equity by the O'Rourke Engineering Construction Company against the Foundation Company. Decree for complainant, and defendant appeals. Affirmed.

On appeal from a decree of the District Court for the Southern District of New York holding valid and infringed claim 2 of Letters Patent No. 678,581 granted July 16, 1901, to John F. O'Rourke for improvements in subterranean or subaqueous dam or foundation construction. Claims 1 and 6 which were in controversy in the District

Court were held invalid, but.the complainant has taken no appeal from the ruling of the court as to these claims.

C. C. Linthicum and D. Anthony Usina, both of New York City, for appellant.

William A. Redding and William B. Greeley, both of New York City, for appellee.

Before LACOMBE, COXE, and ROGERS, Circuit Judges.

COXE, Circuit Judge. The invention relates to the construction, below the surface, of walls, either water resisting simply or adapted as foundations to support the weight of superimposed structures. As these structures, particularly in lower Manhattan, are of steel and stone and are carried to a great height, it·is manifest that the foundations, in order to support the immense weight imposed upon them, must be carried to a correspondingly great depth, often as low as sixty or seventy·feet below the level of the street, until hardpan is reached. It is often necessary to carry the foundations into the hardpan or to the rock below the water-bearing strata. In order to do this work a pneumatic caisson is used. The working chamber of the caisson is a bottomless box with sides and roof air-tight and when in operation with sufficient air pressure to prevent water and quicksand from entering the interior under the cutting edge. In this way the lives·of the workmen in the working chamber are made as safe as so dangerous an occupation will permit. The invention is intended principally for use in the construction of tall buildings and large piers but it is useful whenever it is desired to form, at considerable depth below the surface, a·continuous wall or dam for the purpose of retaining earth or excluding the water of water-bearing strata. This is true whether or not it is also desired to support the weight of superimposed structures. The inventor says:

"The work of construction is carried on in suitable caissons, which may be placed one after another, that portion of the dam or foundation which is formed in one caisson being connected through the adjoining ends or walls of the caisson with that· portion of the wall which is built in the adjoining caisson in such a manner as to make the two portions substantially integral, so that the whole dam or foundation when completed shall be practically continuous from end to end, no joints being left through which water may find its way from one side to the other."

The claim now in issue is as follows:

"2. A plurality of caissons having removable and registering doors or wall-sections in adjacent walls, and having their adjacent walls secured together close to said removable doors or wall-sections."

We have seldom been confronted with such incomplete, obscure and unsatisfactory drawings and descriptions as those of the patent in suit. Figure 4 of the drawings is the one which is supposed to illustrate· the structure described in claim 2. The most important of all the details, namely the bolts which draw and hold the adjacent walls together are not indicated either by letter or figure, and other drawings are equally obscure. We are, however, convinced that the struc-

ture of the claim as explained by counsel and experts shows an improvement over those of the prior art and adds important elements of safety and durability in the construction of buildings requiring deep foundations.  The old method of forcing packing between the blocks or piers of concrete or masonry to exclude the presence of water or quicksand was to pack the spaces between a row of piers with clay rammed into the joints or by driving piles between them.  These methods were unsatisfactory when the piers were sunk to a great depth. In short, O'Rourke proposed to unite the concrete piers theretofore in use into one continuous wall of concrete so that the water on the outside could not seep through into the deep cellar within.   It is unnecessary to attempt a further description of the invention as the diagrams attached to the appellee's brief make the construction of the claim sufficiently plain and are much more satisfactory than anything found in the patent.

What O'Rourke sought to accomplish, so far as claim two is concerned, was the connection of separate piers of concrete into a continuous water-tight wall, the piers being constructed by sinking caissons from the surface and excavating the earth below them.   With this connection made and a homogeneous barrier constructed, quicksand and water can be excluded from the foundations and cellars of large buildings and from the piers of bridges.

It seems to be generally accepted by counsel and by the court below that the best reference produced by the appellant is the article in the Engineering Record describing the construction of the foundations of the Commercial Cable building.   Does this article disclose beyond a reasonable doubt a plurality of caissons having removable and registering doors in adjacent walls with adjacent walls secured together close to the removable doors?   We are compelled to answer this question in the negative.   With the claim in issue before us it is easy to see how a skilled engineer could with little difficulty transform the Cable structure into the O'Rourke structure, but it is equally clear that the article in the Engineering Record does not show the continuous homogeneous wall of the patent and we are persuaded that it required something more than the skill of the calling to transform the earlier into the later structure.   The argument that the continuous wall or dam of O'Rourke is there shown is based wholly on conjecture. The drawings do not show it, but do in fact show the direct contrary.   Figure 23 which is a plan view of the Cable structure, seems to show a space between the piers.   What the article in the Record actually does show it is not necessary to discuss in detail after we are fully convinced that it does not show, beyond a reasonable doubt, the structure of the claim in controversy.   An inventor, seeing the Cable foundations, would perceive the importance of filling in the spaces between the piers with concrete, a skilled mechanic would not.

We agree with Judge Hand that nothing in the record invalidates the claim in controversy.  We think infringement of claim 2 is clearly shown.   The claim is entitled to a liberal construction and one which gives the patentee the benefit of his contribution to the art.   The claim is in plain language and unless it is distorted from its obvious mean-

ing, when considered in connection with the description and drawings, there can be no doubt that the defendant infringes. Its structures and method of procedure are well illustrated by the drawings at pages 221–225 of the record, which are conveniently arranged in juxta-position at the end of the appellee's brief. The elements of the claim are:

First: A plurality of caissons having removable and registering doors or wall sections in adjacent walls.

Second: Having their adjacent walls secured together close to said removable doors.

There can be no doubt that the defendant used the first element. It seeks to have the claim limited to "wall sections which are easily detachable without destruction." The difficulty with this construction is that there is nothing in the description to warrant it. The inventor was not required to limit his claim in a manner so unnecessary and there is nothing to indicate that he intended so to do. This is made clear by the opinion of the District Court as follows:

> "I cannot think that because the ends were chopped out they were not re-movable. Agreeing that the parts so chopped were not 'doors,' it seems to me going very far to say that they were not 'wall-sections.' The defendant did not, it is true, go about the construction in the easiest way, but they got all the benefit of the structure, and they indubitably did remove the wall opposite the 'halfmoons.' Since the claim should not be limited in the methods by which the removability is to be accomplished, it would be an easy way to steal away its heart to use it in a somewhat inconvenient way."

It is unnecessary to add further to the opinions of Judge Hand.

We have not discussed claims 1 and 6 for the reason that they are not properly before us on this appeal.

The decree of the District Court is affirmed with costs.